IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HASAN ADNAN YAGHOUB,

    Petitioner,                               No. CIV S-07-0027 MCE GGH P

    vs.

FOLSOM STATE PRISON WARDEN,

    Respondent.                          FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2004 conviction for the following offenses: receipt of stolen property (counts 2 and 5; Cal. Penal Code § 496(a)); first degree residential burglary (counts 4, 9 and 19; Cal. Penal Code § 459); possession of methamphetamine (counts 6 and 18; Cal. Health & Saf. Code § 11377(a)); misdemeanor possession of drug paraphernalia (count 8; Cal. Health & Saf. Code § 11364); misdemeanor trespass (count 10; Cal. Penal Code § 602(1)); second degree commercial burglary (count 11; Cal. Penal Code § 459); misdemeanor theft from an elderly person (count 20; Cal. Penal Code § 368(d)); and misdemeanor possession of an access card, with intent to defraud, without the cardholder's consent, with the intent to use, sell or transfer (count 21; Cal. Penal Code § 484e(c)).

1

Respondent's Lodged Document A, pp. 1-3.

Petitioner is serving a sentence of 12 years and 8 months imprisonment.

Petitioner challenges his conviction on the following grounds: 1) his sentence violates the Eighth Amendment; 2) insufficient evidence to support counts 9, 19, 20 and 21; 3) ineffective assistance of appellate counsel.

After carefully considering the record, the court recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

/////

1    When reviewing a state court's summary denial of a claim, the court "looks
2 through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234
3 F.3d 1072, 1079 n. 2 (9th Cir. 2000). As to each claim, this court will discuss which state court
4 opinion is entitled to AEDPA deference.
5 III.   Discussion
6        A.   Eighth Amendment
7    The California Court of Appeal issued a reasoned decision denying petitioner's
8 Eighth Amendment claim. Respondent's Lodged Document D. The California Supreme Court
9 summarily denied this claim. Id., Lodged Document F. Accordingly, the court considers
10 whether the denial of this claim by the California Court of Appeal was an unreasonable
11 application of clearly established Supreme Court authority.
12    Petitioner argues that his sentence of 12 years and 8 months for nonviolent, petty
13 property offenses is cruel and unusual in violation of the Eighth Amendment. Petitioner argues
14 that the offenses were clearly attempts to support an addiction to methamphetamine. Petitioner's
15 only prior conviction was for larceny 20 years before the at-issue offenses.
16    Petitioner does no more than rely on his briefing before the California Supreme
17 Court regarding the Eighth Amendment issue. In responding to the Court of Appeal's statement
18 that his Eighth Amendment "disproportionate punishment" theory was frivolous, petitioner
19 simply cited Ewing v. California, 538 U.S. 11, 123 S. Ct. 1179 (2003), and claimed that if the
20 sentence "shocked the conscience," relief should be granted.
21    In this habeas action, however, petitioner must point to Supreme Court authority,
22 or post-Ewing circuit authority applying Ewing which demonstrates the *objective*
23 *unreasonableness* of petitioner's adverse decision. This he has not done herein. Nor do the facts
24 of Ewing direct a conclusion that the sentence for petitioner's crime spree is so far removed from
25 what Ewing related in its case that objective unreasonableness could be found herein. Indeed, the
26 facts of petitioner's case are much closer to the facts of Ewing, where that petitioner was

4

unsuccessful with his Eighth Amendment claim, than so far away in terms of petitioner's lesser culpability that objective unreasonableness could be found. Further, Ewing received a life sentence for a petty offense heavily flavored with recidivism. Here petitioner received a sentence of a little over twelve years (possibly only six with full work and good time credits) for multiple felonies and misdemeanors. The Court of Appeal was not far off the mark in its assessment, if at all.

In the instant case, petitioner's sentence of 12 years and 8 months for his conviction of eight felonies and four misdemeanors involving drug and property crimes is not so grossly disproportionate to the crimes so as to violate the Eighth Amendment.

Petitioner also argues that his crimes were clearly committed to support an addiction, and that he is being unconstitutionally punished for being an addict. Petitioner's sentence did not improperly punish him for his drug addict status or condition. Rather, he was punished for stealing property and possessing drugs. See Robinson v. California, 370 U.S. 660, 82 S. Ct. 1417 (1962) (holding that a drug addict cannot be punished for his status as an addict); Powell v. Texas, 392 U.S. 514, 533, 88 S. Ct. 2145, 2154-2155 (1968) (an offense is not a status crime if it is based on an underlying act or behavior which society has an interest in preventing). While petitioner may have been motivated by his addiction to commit these offenses, the motivation for the criminal activity does not define the crime. Id.

Because the denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority, this claim should be denied.

B. Insufficient Evidence and Ineffective Assistance

Petitioner argues that there was insufficient evidence to support his convictions for counts 9, 19, 20 and 21. Petitioner also argues that his appellate counsel was ineffective for failing to raise these claims on appeal.

\\\\\

Petitioner raised his sufficiency of the evidence claims in a petition for writ of habeas corpus filed in the Sacramento County Superior Court.  Respondent's Lodged Document G.  The Superior Court denied the petition on grounds that the claims should have been raised on appeal, with citations to In re Dixon, 41 Cal.2d 756, 759 (1953) and In re Harris, 5 Cal.4th 813, 829 (1993).  Id., Lodged Document H.  Petitioner raised the insufficiency of evidence and the ineffective assistance of appellate counsel claims in a habeas corpus petition filed in the California Court of Appeal.  Id., Lodged Document I.  The California Court of Appeal denied the petition, citing In re Harris, 5 Cal.4th 813, 829 (1993).  Id., Lodged Document J.  Petitioner raised the sufficiency of evidence claims and the ineffective assistance of counsel claims in a habeas corpus petition filed in the California Supreme Court.  Id., Lodged Document K.  The California Supreme Court denied the petition without comment or citation.  See Exhibits to Petition.

Respondent argues that petitioner's sufficiency of evidence claims are procedurally defaulted.  Where there has been one reasoned state judgment rejecting a federal claim, and later unexplained orders upholding that judgment or rejecting the same claim, courts "look through" to the last reasoned decision.  Ylst v. Nunnemaker, 501 U.S. 797, 803-804, 111 S.Ct. 2590, 2594-95 (1991).  Because the California Supreme Court denied petitioner's habeas petition without comment or citation, the court looks through this order to the decision of the California Court of Appeal, which denied petitioner's state habeas petition by citing In re Harris, 5 Cal.4th 813, 829 (1993) which, as discussed above, stands for the proposition that the claims raised should have been raised on appeal.

The issue of sufficiency of evidence is not cognizable in a habeas petition.  In re Spears, 157 Cal.App.3d 1203, 1209-1210, 204 Cal.Rptr. 333, 336-337 (1984).  However, a claim of ineffective assistance of appellate counsel for failure to raise the issue of insufficiency of evidence on appeal is cognizable in a habeas proceeding.  Id.  Because it is clear that the citation to In re Harris by the California Court of Appeal applied only to the claims alleging insufficient

evidence, the court finds that this order is not ambiguous. See Calderon v. United States Dist. Ct. for the E.D. of Cal., 96 F.3d 1126, 1131 (9th Cir. 1996) (holding that a California Supreme Court order is ambiguous and thus provides no basis to apply a procedural bar rule when it does not specify which claims are rejected under a citation).

Accordingly, the court now considers whether petitioner's insufficient evidence claims are procedurally barred. "The procedural default doctrine '[b]ars federal habeas when a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement.'" Id., at 1129 (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991)). The doctrine "'is a specific application of the general adequate and independent state grounds doctrine.'" Id., at 1129 (quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994)). Under the adequate and independent state grounds doctrine, federal courts "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Id. (quoting Coleman, 501 U.S. at 729).

In Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003), the Ninth Circuit set out the burden-shifting analysis applicable to the issue of procedural default. First, the state must adequately plead "the existence of an independent and adequate state procedural ground as an affirmative defense[.]" 322 F.3d at 586. Once the state meets that pleading requirement, "the burden to place that defense in issue shifts to the petitioner. The petitioner must satisfy the burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." Id. If the petitioner meets that burden, the "ultimate burden of proving the adequacy of the California state bar [shifts back to] the State of California." Id. at 585-86.

In the answer, respondent argues that petitioner's insufficiency of the evidence claims are procedurally barred based on the procedural rule set forth in In re Harris, as cited by the California Court of Appeal. Accordingly, the court finds that respondent has adequately

7

plead the existence of an independent and adequate state procedural ground as an affirmative defense. The burden then shifted to petitioner to assert specific factual allegations that the procedural rule set forth in In re Harris was not consistently applied. Petitioner did not file a reply or otherwise respond to respondent's answer. Accordingly, the court finds that petitioner has failed to meet his burden. Therefore, his insufficiency of evidence claims are procedurally barred.

Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. Coleman, 501 U.S. at 750, 111 S.Ct. at 2565. A claim of constitutionally ineffective assistance of counsel can be cause to excuse procedural default. Murray v. Carrier, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-2646 (1986).

As discussed above, petitioner alleges that appellate counsel was ineffective for failing to raise his insufficiency of the evidence claims. The court will now address this claim, on its merits and also to determine whether it constitutes cause for the default of the insufficiency of the evidence claims. Because no state court issued a reasoned opinion addressing the ineffective assistance of appellate counsel claim, this court independently reviews the record to determine whether the denial of this claim was an unreasonable application of clearly established Supreme Court authority.

A claim of ineffective assistance of appellate counsel utilizes the same Strickland standard that is applied to trial counsel. Smith v. Robbins, 528 U.S. 259, 287, 120 S. Ct. 746, 765 (2000).

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable

professional judgment. Id. at 690, 104 S. Ct. at 2066.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id., 104 S. Ct. at 2066.  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052.  Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. See Williams, supra, at 411, 65 S. Ct. 363.  Rather, he must show that the [ ]Court of Appeals applied Strickland to the

facts of his case in an objectively unreasonable manner. <u>Bell v. Cone</u>, 535 U.S. 685, 698-699, 122 S. Ct. 1843, 1852 (2002).

In California, "[t]he test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt." <u>People v. Johnson</u>, 26 Cal.3d 557, 576 (1980). In the instant case, petitioner must demonstrate that based on this standard, there is a reasonable probability that his convictions for counts 9, 19, 20 and 21 would have been reversed had appellate counsel raised the insufficiency of the evidence claims.

In order to put these claims in context, the court will summarize the facts concerning counts 9, 19, 20 and 21. The opinion of the California Court of Appeal contains a factual summary of these counts. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

*Count 9: Residential Burglary*

About 2:00 p.m. on January 27, 2004, Jon Hurst was in his house when he saw someone rummaging around in the storage area attached to the garage. Hurst called the police who found defendant walking away from the Hurst's house. With defendant's consent, an officer searched defendant, finding 7.04 grams of methamphetamine and a glass pipe. Defendant was carrying a briefcase that contained two laptop computers, one with its serial number scratched off. Hurst found nothing missing.

Respondent's Lodged Doc. D, pp. 3-4.

*Counts 19 (residential burglary), 20 (theft from elderly person), 21 (fraudulent acquisition of credit card).*

In the morning of January 13, 2004, defendant went to the Lady Senior Apartment complex, spoke with 95 year old Irene McClung, a resident, and falsely identified himself as a social worker employed by the complex to help her with problems in the apartment. McClung requested that defendant make a repair in the bathroom and he stated he would contact maintenance, which he never did. When defendant spoke with McClung, he obtained her name, address, and account number from her credit card, which she handed to defendant. When defendant left, he took the credit card with him. McClung notified the police once she realized her credit card was missing.

<u>Id.</u>, p. 5.

Under Cal. Penal Code § 459 (counts 9, 19), residential burglary "consists of an unlawful entry with the intent to commit a felony. Thus, the crime is complete, i.e. one may be prosecuted and held liable for burglary, upon entry with the requisite intent. [Citation.]" People v. Washington, 50 Cal.App.4th 568, 578-579, 57 Cal.Rptr.2d 774, 789-780 (1996).

Cal. Penal Code § 368(d), theft from an elderly person (count 20) provides, in relevant part,

> Any person who is not a caretaker who violates any provision of law proscribing theft, embezzlement, forgery or fraud, or wh violates Section 530.5 proscribing identity theft, with respect to the property or personal identifying information of an elder or a dependent adult, and who knows or reasonably should know that the victim is an elder or a dependent adult, is punishable by imprisonment in a county jail not exceeding one year...

Cal. Penal Code § 484e(c), possession of credit card without consent (count 21) provides, "Every person who, with the intent to defraud, acquires or retains possession of an access card without the cardholder's consent or issuer's consent, with intent to use, sell or transfer it to a person other than the cardholder or issuer is guilty of petty theft."

Petitioner argues that there was insufficient evidence to support his burglary conviction in count 9 because he was not found to possess any of Hurst's property and that Hurst did not identify him as the actual burgler.

As indicated above, a conviction for burglary does not require the defendant to actually steal anything from the victim. Rather, a conviction for residential burglary requires that the defendant enter the property with the intent to commit a felony. Cal. Penal Code § 459. In the instant case, petitioner was charged with entering Hurst's property with the intent to commit larceny. CT at 172. That no property of Hurst's was found in his possession does not undermine his conviction.

At trial, as discussed above, Hurst testified that he heard someone in the storage area of his garage. RT at 278. He could not see the person through the frosted glass window into this area, but he could see a shadow of a person in there. RT at 278-279. He could hear things

being moved around in the area. RT at 279. Hurst called 911 then went to the front of his house. RT at 280-281. A few minutes later, he saw someone walking between his house and his neighbor's house, walking away from his house. RT at 281-282. Hurst testified that the person who walked in his yard was the same person who ended up being arrested. RT at 282-283. At trial, Hurst could not identify petitioner as this person. RT at 283.

While Hurst did not clearly see petitioner in the storage area of his garage, the fact that he saw petitioner walking through his yard and away from his house a few minutes after he heard the man in this area was sufficient evidence that petitioner had been in his garage. Based on this evidence, there is no reasonable probability that his conviction for count 9 would have been reversed had appellate counsel raised this issue on appeal.

Petitioner next argues that there was insufficient evidence to support his conviction for count 20, Cal. Penal Code § 484e(c), because there was no evidence that he acquired McClung's credit card with the intent to defraud. Petitioner also argues that there was no evidence that he had the card in his possession or that he tried to sell or use it.

At trial, McClung's caretaker testified that petitioner told them that he was a member of the apartment complex staff, like a social worker. RT at 31. Petitioner told them that he was there to help McClung with any problems she was having with the apartment. RT at 31. Petitioner did not work for the apartment complex. RT at 45-47. McClung testified that she gave petitioner her credit card. RT at 20. After petitioner left her apartment, she called the police to report that petitioner had taken her credit card. RT at 22. In addition, McClung's caretaker, Justin Hampton, testified that he saw petitioner with McClung's credit card. RT at 33.

The testimony set forth above demonstrates that petitioner lied to McClung and Hampton in order to get the credit card. This testimony also demonstrates that petitioner left McClung's apartment with the credit card. A conviction for § 484e does not require that petitioner use the stolen credit card. With respect to intent, a fair inference could be drawn, based upon all the deceitful conduct, that petitioner did intend to defraud McClung out of her

1  card to her ultimate detriment when he used the card.

2  Petitioner also argues that there was insufficient evidence to support his
3  conviction for counts 19-21 because McClung did not identify him as the man who she gave her
4  card to. It is true that at trial McClung could not identify petitioner as the man who took her
5  credit card. However, Justin Hampton testified that he was at McClung's apartment during this
6  incident. RT at 30-32. Hampton identified petitioner as the man in McClung's apartment. RT at
7  32.

8  For the reasons discussed above, the court finds that there is no reasonable
9  probability that his convictions for counts 9, 19, 20 and 21 would have been reversed had
10 appellate counsel raised the insufficiency of the evidence claims. Therefore, petitioner has not
11 demonstrated cause for the procedural default of these claims. Nor does the court find that a
12 miscarriage of justice will occur if this court fails to consider these claims. Accordingly, the
13 court will not consider these defaulted claims.

14 Petitioner's ineffective assistance of appellate counsel claim also fails because
15 petitioner has not demonstrated prejudice based on counsel's failure to raise these claims on
16 appeal. Nor does the court find that counsel acted unreasonably in failing to raise these claims.
17 After independently reviewing the record, the court finds that the denial of this claim by the
18 California Supreme Court was not an unreasonable application of clearly established Supreme
19 Court authority. Accordingly, this claim should be denied.

20 Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a
21 writ of habeas corpus be denied.

22 These findings and recommendations are submitted to the United States District
23 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty
24 days after being served with these findings and recommendations, any party may file written
25 objections with the court and serve a copy on all parties. Such a document should be captioned
26 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

1  shall be served and filed within ten days after service of the objections.  The parties are advised
2  that failure to file objections within the specified time may waive the right to appeal the District
3  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4  DATED: 10/19/07

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

8  yag27.157